1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

Stephen J. Iwaniszek,

               Plaintiff,

     v.

Pride Transport, Inc.,

               Defendant.

Case No. 2:17-cv-02918-JCM-BNW

**ORDER**

11
12
13
14

      Before the Court is plaintiff Stephen J. Iwaniszek's application for leave to proceed in forma pauperis ("IFP"). ECF No. 21.  Iwaniszek submitted the affidavit required by 28 U.S.C. § 1915(a) showing an inability to prepay fees or costs or give security for them.  Therefore, Iwaniszek's request to proceed IFP will be granted.

15
16
17
18
19
20

      Further, as required by 28 U.S.C. § 1915(e)(2), the Court screened plaintiff's operative complaint below.  Iwaniszek failed to allege a plausible claim for relief under any of the statutes cited or theories raised in his complaint.  Therefore, his complaint will be dismissed without prejudice but with leave to amend.  Plaintiff must closely review this screening order and file an amended complaint, if he wishes to proceed with this action, in accordance with the Court's instructions by March 10, 2021.

21  **I.      Procedural history**

22
23
24
25
26
27

      Iwaniszek initiated this matter with an application to proceed IFP and an accompanying complaint on November 21, 2017. ECF No. 1.  The magistrate judge then-assigned to this matter recommended to the district judge that he deny Iwaniszek's application because his income and assets were sufficient to pre-pay the costs and fees for this civil action. ECF No. 6 at 2–3.  Since that time, Iwaniszek filed an updated application to proceed IFP, ECF No. 21, which the Court granted above.

28

On February 13, 2019, the Court screened Iwaniszek's original complaint, dismissed it without prejudice for failure to state a claim, and allowed Iwaniszek an opportunity to file an amended complaint. ECF No. 4.  Iwaniszek filed his amended complaint at ECF No. 11.

**II.      Iwaniszek's allegations and claims for relief**

Iwaniszek was previously employed by defendant Pride Transport, Inc. *Id.* at 2.  He alleges that he sustained an injury on September 21, 2016, while on the job. *Id.*  Specifically, he claims that he strained his "muscle of fascia and tendons of the lower back." *Id.*

Following this injury, a physician ordered that Iwaniszek be permitted to return to work but that he be restricted from lifting over 10 pounds and driving a company vehicle. *Id.* at 3, 10.[1] Iwaniszek claims that Pride Transport failed to accommodate this order between September 18, 2016, through December 20, 2016. *Id.* at 3.  Iwaniszek further claims that Pride Transport attempted to have him sign "various leave of work contracts." *Id.*

Iwaniszek filed a workers' compensation claim on September 21, 2016. *Id.* at 24.  His claim was denied on November 3, 2016. *Id.*  Iwaniszek alleges that the filing of this claim resulted in the termination of his employment by Pride Transport on or around December 1, 2016. *Id.* at 3.

Following this termination, Iwaniszek submitted a claim for unemployment benefits to the State of Utah Unemployment Division. *Id.* at 6.  Iwaniszek alleges that Pride Transport lied to the unemployment division when it informed the unemployment division that Iwaniszek had resigned from his employment. *Id.*  In truth, Iwaniszek alleges, Pride Transport had terminated Iwaniszek's employment. *Id.*  This alleged lie resulted in the unemployment division denying Iwaniszek's unemployment claim. *Id.* at 3, 6.

Based on these allegations, Iwaniszek asserts claims against Pride Transport for violations of the Americans with Disabilities Act, violation of the Rehabilitation Act, violations of Title VII,

---

[1]  The Court draws this allegation from an exhibit that Iwaniszek attached to his complaint. ECF No. 11 at 10.  In determining whether a plaintiff has stated a plausible claim for relief, the Court may consider documents attached to the complaint. *Dunning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

1  violation of the Genetic Information Nondiscrimination Act, and for breach of trust, breach of

2  contract, and breach of the implied covenant of good faith and fair dealing.

3  **III.     Screening standard**

4  Upon granting a request to proceed *in forma pauperis*, a court must screen the complaint

5  under 28 U.S.C. § 1915(e)(2).  In screening the complaint, a court must identify cognizable

6  claims and dismiss claims that are frivolous, malicious, fail to state a claim on which relief may

7  be granted, or seek monetary relief from a defendant who is immune from such relief.  28 U.S.C.

8  § 1915(e)(2).  Dismissal for failure to state a claim under § 1915(e)(2) incorporates the standard

9  for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *Watison v. Carter*,

10  668 F.3d 1108, 1112 (9th Cir. 2012).  To survive § 1915 review, a complaint must "contain

11  sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

12  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court liberally construes pro se complaints

13  and may only dismiss them "if it appears beyond doubt that the plaintiff can prove no set of facts

14  in support of his claim which would entitle him to relief."  *Nordstrom v. Ryan*, 762 F.3d 903, 908

15  (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

16  In considering whether the complaint is sufficient to state a claim, all allegations of

17  material fact are taken as true and construed in the light most favorable to the plaintiff.  *Wyler*

18  *Summit P'ship v. Turner Broad. Sys. Inc.*, 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted).

19  Although the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff

20  must provide more than mere labels and conclusions.  *Bell Atlantic Corp. v. Twombly*, 550 U.S.

21  544, 555 (2007).  A formulaic recitation of the elements of a cause of action is insufficient.  *Id.*

22  Unless it is clear the complaint's deficiencies could not be cured through amendment, a pro se

23  plaintiff should be given leave to amend the complaint with notice regarding the complaint's

24  deficiencies.  *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

25  **IV.     Analysis**

26  **A.  Title VII**

27  Title VII "is central to the federal policy of prohibiting wrongful discrimination in the

28  Nation's workplaces." *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 342 (2013).

1  It forbids two categories of employer conduct.  The first category is status-based discrimination,

2  which prohibits an employer from discriminating on the basis of race, color, religion, sex, or

3  national origin. *Id.* (citing 42 U.S.C. § 2000e-2(a)).  The second category is "employer

4  retaliation," which prohibits an employer from retaliating against an employee for having

5  opposed, complained of, or sought remedies for unlawful workplace discrimination forbidden by

6  Title VII. *Id.* (citing 42 U.S.C. § 2000e-3(a)).

7      **1.  Title VII discrimination**

8        To state a prima facie case of status-based discrimination under Title VII, plaintiff must

9  allege that: (1) plaintiff belongs to a protected class; (2) plaintiff was qualified for the position;

10  (3) plaintiff was subject to an adverse employment action; and (4) similarly situated individuals

11  outside of plaintiff's protected class were treated more favorably. *McDonnell Douglas Corp. v.*

12  *Green*, 411 U.S. 792, 802 (1973).[2]

13        Here, plaintiff has not alleged a plausible status-based discrimination claim under Title

14  VII.  For the first element, plaintiff does not allege that he belongs to a protected class.  Indeed,

15  the complaint lacks any reference to plaintiff's race, color, religion, sex, or national origin.

16  Further, plaintiff does not allege that he was qualified for his job position, which means his

17  allegations fail to meet the second element, too.  Finally, regarding the third element, plaintiff

18  failed to allege that similarly situated individuals outside his protected class were treated more

19  favorably.  Therefore, plaintiff's claim will be dismissed without prejudice but with leave to

20  amend.[3]

21      **2.  Title VII retaliation**

22        For a retaliation claim under Title VII, plaintiff must allege: (1) that plaintiff engaged in a

23  protected activity; (2) that plaintiff suffered a materially adverse action that would deter a

24  reasonable employee from making a charge of employment discrimination; and (3) a but-for

---

26      [2]  A plaintiff need not establish a prima facie case of discrimination in the complaint, since the prima facie case is an evidentiary standard, not a pleading requirement. *Coates v. Washoe Cnty. Sch. Dist.*, 2020 WL 7186746, at *2 (D. Nev. Dec. 4, 2020).  But "the elements of each alleged cause of action help to determine whether plaintiff has set forth a plausible claim for relief." *Id.* (quotation omitted).

28      [3]  The Court identified these same deficiencies in its prior screening order. ECF No. 4.

causal link between the protected activity and the adverse action. *See Porter v. Calif. Dept. of Corrections*, 419 F.3d 885, 894 (9th Cir. 2005); *Nassar*, 570 U.S. at 359–60. An employee engages in protected activity if the employee: (1) opposes any practice made unlawful by Title VII; or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. *Brophy v. Day & Zimmerman Hawthorne Corp.*, 799 F. Supp. 2d 1185, 1199 (D. Nev. 2011) (citing 42 U.S.C. § 2000E-3(a)).

Here, plaintiff has not alleged a plausible claim for Title VII retaliation. Plaintiff has not pointed to any oppositional activity that he engaged in. Nor has plaintiff alleged that he participated in an investigation, proceeding, or hearing under Title VII. Therefore, plaintiff has not alleged that he engaged in a protected activity, and his claim fails at the first element.

Even if plaintiff had sufficiently alleged a protected activity, plaintiff's claim would still fail at the third element because he failed to allege but-for causation. *Albro v. Modly*, 2020 WL 1937056, at *12 (E.D. Cal. Apr. 22, 2020) (dismissing a Title VII retaliation claim for failing to allege "the heightened but-for causation standard"). Thus, plaintiff has not alleged a plausible Title VII retaliation claim. Accordingly, plaintiff's claim will be dismissed without prejudice but with leave to amend.

### B. Americans with Disabilities Act

The Americans with Disabilities Act ("ADA") prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA applies to private employers. *Puckett v. Park Place Ent. Corp.*, 332 F. Supp. 2d 1349, 1352 (D. Nev. 2004).

Here, it appears that plaintiff alleges an ADA claim under three theories: failure to accommodate, discrimination, and retaliation.[4]

---

[4] The necessary elements of an ADA claim can differ based on context, "in part because a prima facie case is an evidentiary standard, not a pleading requirement." *U.S. Equal Employment Opportunity Comm'n v. MCJ, Inc.*, 306 F. Supp. 3d 1204, 1221 (D. Haw. 2018) (quotations and citation omitted). Thus, while an ADA plaintiff may not be strictly bound by the elements of a prima facie case, those elements are a useful tool in assessing whether a complaint meets Rule 8's pleading standard. *Id.*

1

### 1. Failure to accommodate under the ADA

For a plausible failure-to-accommodate claim under the ADA, plaintiff must allege that: (1) plaintiff is disabled within the meaning of the ADA; (2) plaintiff is a qualified individual with a disability; (3) plaintiff requested an accommodation; (4) the employer knew of the requested accommodation; and (5) the employer failed to reasonably accommodate plaintiff's disability. *Pham v. Las Vegas Superstore, Inc.*, 2015 WL 1906345, at *2 (D. Nev. Mar. 12, 2015) (citing *Sanders v. Arneson*, 91 F.3d 1351, 1353 (9th Cir. 1996)). "Generally, an employee must initially request the accommodation, but if the employer knows the employee is disabled and [is] having workplace problems as a result, it may not be required the employee make the initial request." *Id.* (citing *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1188 (9th Cir. 2001)).

The ADA defines a "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Puckett*, 332 F. Supp. 2d at 1352–53 (citing 42 U.S.C. § 12102(2)).  Lifting is a major life activity. *Id.* at 1353.

Here, plaintiff fails to state a viable failure-to-accommodate claim under the ADA. Regarding the first element, plaintiff's physician restricted him from lifting more than 10 pounds. ECF No. 11 at 10.  A lifting restriction of "more than 25 pounds on a continuous basis" is—as a matter of law—not substantially limiting. *Thompson v. Holy Family Hosp.*, 121 F.3d 537, 540 (9th Cir. 1997) (per curiam) (citations omitted).[5]  But whether a lifting restriction of more than 10 pounds constitutes a "substantial limitation" remains a question of fact inappropriate for resolution at the screening stage. *See Dewitz v. Teleguam Holdings, LLC*, 2014 WL 1410156, at *8 (D. Guam Apr. 10, 2014).  Therefore, under *Dewitz*, plaintiff has sufficiently alleged the first element of his ADA claim.

However, plaintiff's claim fails at the second element because plaintiff did not allege that he was a qualified individual with a disability.[6]  A qualified individual is "an individual who, with

---

[5] *Superseded on other grounds by statute*, ADA Amendment Act of 2008, Publ. L. No. 110–325.

[6]  The court identified this same deficiency in its prior screening order. ECF No. 4 at 6.

1    or without reasonable accommodation, can perform the essential functions of the employment

2    position that such individual holds or desires." *Lambdin v. Marriott Resorts Hospitality Corp.*,

3    2015 WL 263569, at *3 (D. Haw. Jan. 21, 2015) (citing 42 U.S.C. § 12111(8)).  Here, plaintiff

4    did not allege that he was capable of performing the essential functions of his position with or

5    without a reasonable accommodation.  To be sure, plaintiff "need not include any magical

6    invocation of the 'prima facie case' language" to meet Rule 8's pleading standard, but he "cannot

7    leave his opponent and the court with no information at all about whether or how he falls under

8    the ADA." *Id.*  The absence of an allegation about such a basic matter weighs in favor of

9    dismissal. *Id.*  But plaintiff will be given a final opportunity to meet the pleading standard for his

10   failure-to-accommodate claim.[7]

11           Conversely, plaintiff has sufficiently alleged the third and fourth elements of his claim.

12   Following plaintiff's injury, plaintiff's physician restricted plaintiff from lifting anything over 10

13   pounds and from driving the company vehicle. ECF No. 11 at 10.  Based on internal

14   communications among Pride Transport's employees, Pride Transport was aware of these

15   restrictions. ECF No. 11 at 29.[8]  After broadly construing plaintiff's complaint, this is sufficient at

16   the pleading stage for the third and fourth elements because Pride Transport was aware of the

17   disability and the restrictions attendant to that disability.

18           Further, for the fifth element, plaintiff alleges that Pride Transport failed to provide

19   modified duty in the workplace. ECF No. 11 at 4.  Although a bit sparse, the Court broadly

20   construes plaintiff's allegation to mean that Pride Transport refused to allow plaintiff to continue

21   working within the restrictions ordered by his physician.  This is sufficient for the fifth element at

22   this preliminary stage.

23           In sum, plaintiff's failure-to-accommodate claim fails at the second element because he

24   did not allege that he was qualified for his position.  This claim will be dismissed without

25   prejudice but with leave to amend.

26   _____

27       [7]  The court identified this deficiency in its prior screening order. ECF No. 4 at 6.

28       [8]  In determining whether a plaintiff has stated a plausible claim for relief, the Court may consider
     documents attached to the complaint. *Dunning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

1

### 2. General discrimination under the ADA

2

To state a colorable claim for disability discrimination under the ADA, plaintiff must

3

allege that plaintiff: (1) is a disabled person under the ADA; (2) is a qualified individual with a

4

disability; and (3) suffered an adverse employment action because of plaintiff's disability. *Ravel v.*

5

*Hewlett-Packard Enter., Inc.*, 228 F. Supp. 3d 1086, 1092 (E.D. Cal. 2017).

6

Plaintiff has not alleged a plausible ADA discrimination claim.  For the first element, the

7

Court has already found that plaintiff has sufficiently alleged he is a disabled person under the

8

ADA.  However, for the second element, the Court has likewise already found that plaintiff failed

9

to allege he was a qualified individual under the ADA because he did not allege that he was

10

capable of performing the essential functions of his position with or without a reasonable

11

accommodation.  Thus, plaintiff's claim fails at the second element.

12

The third element—whether plaintiff suffered an adverse employment action—presents a

13

close call.  An adverse employment action "materially affects the compensation, terms, conditions,

14

or privileges of . . . employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008)

15

(brackets omitted).  Under Count II of his complaint, plaintiff alleges that Pride Transport violated

16

the ADA because it "attempted" to persuade him "to sign various leave of work contracts and

17

requests, thus, frustrating the pending workers' compensation claims." ECF No. 11 at 5.  It is

18

unclear to the Court whether plaintiff alleges that the persuasion attempts impacted plaintiff's

19

workers' compensation claim or, conversely, whether plaintiff alleges that the persuasion attempts

20

***would have*** materially impacted his workers' compensation claim had the attempts been

21

successful.  Broadly construed, it appears plaintiff alleges the former rather than the latter.  Thus,

22

the Court will not dismiss the claim on this basis.

23

Still, plaintiff's claim fails at the second element, so this claim will also be dismissed

24

without prejudice but with leave to amend.

25

26

27

28

1        **3.  Retaliation**

2        ADA retaliation claims are analyzed under the same framework as Title VII retaliation

3    claims. *Purcell v. Am. Legion*, 44 F. Supp. 3d 1051, 1056 (E.D. Wash. 2014).  Therefore, to state

4    a plausible ADA retaliation claim, plaintiff must allege: (1) involvement in a protected activity;

5    (2) an adverse employment action; and (3) a but-for causal link between the two. *Arnold v. Pfizer,*

6    *Inc.*, 970 F. Supp. 2d 1106, 1140 (D. Ore. 2013) (citing *Brooks v. City of San Mateo*, 229 F.3d

7    917, 928 (9th Cir. 2000)); *Gallagher v. San Diego Unified Port Dist.*, 14 F. Supp. 3d 1380, 1386

8    (S.D. Cal. 2014).

9        Here, plaintiff does not state a plausible claim for ADA retaliation.  For the first element,

10   plaintiff alleges that he was fired for filing a workers' compensation claim. ECF No. 11 at 5.  The

11   Ninth Circuit has not authoritatively decided whether the filing of a workers' compensation claim

12   is a protected activity under the ADA. *Williams v. City of Las Vegas*, 359 Fed. Appx. 753, 754

13   (9th Cir. 2009) (unpublished).  A few district courts in our circuit have answered that question in

14   the affirmative. *See, e.g.*, *Rider v. Lincoln Cnty. Sch. Dist.*, 2015 WL 853071, at *5 (D. Ore. Feb.

15   24, 2015); *but see Larson v. Liberty Mutual Fire Ins. Co.*, 2011 WL 13196103, at *1 (D. Haw.

16   Mar. 4, 2011) ("asserting workers' compensation rights is not necessarily the same as asserting

17   rights under the ADA"); *Kendall v. Donahoe*, 913 F. Supp. 2d 186, 193 (W.D. Pa. 2012)

18   ("[n]early every court that has confronted the issue has held that the filing of a workers'

19   compensation claim in itself is not protected activity under the ADA").

20       Here, this matter has not advanced beyond the screening stage and the Court therefore

21   lacks any briefing from the parties on this point of law.  Therefore, the Court will assume without

22   deciding that the filing of a workers' compensation claim is sufficient to meet the first element of

23   plaintiff's ADA retaliation claim.

24       Still, plaintiff's claim fails at the third element.  Plaintiff alleges in his complaint that

25   defendant wrongfully terminated him for exercising his right to file a workers' compensation

26   claim.  Termination is an adverse employment action under the ADA, so plaintiff's claim meets

27   the second element.  However, plaintiff failed to allege that the adverse employment action

28   "would not have occurred in the absence of—that is, but for—" his protected activity. *See Albro*

1    *v. Modly*, 2020 WL 1937056, at *12 (E.D. Cal. Apr. 22, 2020) (dismissing a Title VII retaliation

2    claim for failing to allege "the heightened but-for causation standard"); *Barnett v. U.S. Air, Inc.*,

3    228 F.3d 1105, 1121 (9th Cir. 2000) (en banc) (finding that the Title VII retaliation framework

4    applies to ADA retaliation claims), *vacated on other grounds*, 535 U.S. 391 (2002).

5         In sum, even assuming that the filing of a workers' compensation claim is a protected

6    activity under the ADA, plaintiff's ADA retaliation claim still fails because he did not allege but-

7    for causation.  Thus, the Court will dismiss this claim without prejudice but with leave to amend.

8         **C.  Genetic Information Nondiscrimination Act (the "GINA")**

9         The purpose of GINA is to prevent employers from making a "predictive assessment

10   concerning an individual's propensity to get an inheritable genetic disease or disorder based on

11   the occurrence of an inheritable disease or disorder in [a] family member." *Poore v. Peterbilt of*

12   *Bristol, L.L.C.*, 852 F. Supp. 2d 727, 730 (W.D. Va. 2012).  To that end, GINA prohibits an

13   employer from discriminating or taking adverse action against an employee because of genetic

14   information. 42 U.S.C. § 2000ff-1(a). The Act likewise prohibits an employer from requesting,

15   requiring, or purchasing genetic information concerning an employee. § 2000ff-1(b). "Genetic

16   information" means information about (1) an individual's genetic test, (2) genetic tests of an

17   individual's family members, or (3) the manifestation of a disease or disorder in an individual's

18   family members. § 2000ff(4).

19        Here, plaintiff alleges no facts showing that he was discriminated against based on his or

20   his family's genetic tests or diseases that run in his family.  He does not explain how any

21   discriminatory conduct is related to his genetic information.  There is no factual basis for this

22   claim, and it will be dismissed without prejudice but with leave to amend.[9]

23        **D.  Rehabilitation Act**

24        Section 504 of the Rehabilitation Act ("RA") prohibits discrimination on the basis of

25   disability "under any program or activity receiving Federal financial assistance."  *McKeon v.*

26   *Central Valley Community Sports Foundation*, 2019 WL 7282047, at *4 (E.D. Cal. Dec. 27,

27

28        [9]  The Court identified this same deficiency, too, in its prior screening order. ECF No. 4 at 6.

2019) (citing 19 U.S.C. § 794(a)).  Section 504 has been authoritatively construed to reach

employment discrimination. *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 632 (1984).

To establish a claim under § 504 of the RA, a plaintiff must allege that plaintiff: (1) is a

handicapped person under the Act; (2) is otherwise qualified for the position sought or held; (3)

was excluded from the position solely by reason of plaintiff's handicap; and (4) is seeking a

position that exists as part of a program or activity receiving federal financial assistance. *See*

*Janet G. v. Hawaii, Dept. of Ed.*, 410 F. Supp. 2d 958, 964–65 (D. Haw. 2005) (citing *Smith v.*

*Barton*, 914 F.2d 1330, 1338–39 (9th Cir. 1990)).  Under the RA's implementing regulations, a

"handicapped person" is "any person who (i) has a physical or mental impairment which

substantially limits one or more major life activities; (ii) has a record of such impairment, or (iii)

is regarded as having such an impairment." 34 C.F.R. § 104.3(j)(1).   "Major life activities"

means "functions such as caring for one's self, performing manual tasks, walking, seeing,

hearing, speaking, breathing, learning, and working." § 104.3(j)(2)(ii).  And an "otherwise

qualified individual" is an individual with a disability "who, with or without reasonable

accommodation, can perform the essential functions of [the] position." *Aki v. Univ. of Calif.*

*Lawrence Berkeley Nat'l Laboratory*, 74 F. Supp. 3d 1163, 1175 (N.D. Cal. 2014) (citing

*Mustafa v. Clark Cnty. Sch. Dist.*, 157 F.3d 1169, 1175 (9th Cir. 1998)).

Here, plaintiff has not alleged a plausible claim under the RA.  Plaintiff meets the first

element because lifting more than 10 pounds and driving a truck appear to be the sort of "manual

task" covered by the RA. *Evans v. Runyon*, 965 F. Supp. 1388, 1389 (C.D. Cal. 1997) (finding

that plaintiff was handicapped based on evidence that she injured her left foot and "could not . . .

drive").

However, plaintiff's claim fails at the second element because he did not allege that he

was otherwise qualified for the position he held.  Again, plaintiff cannot leave his opponent or the

Court in the dark about whether or how he falls under the RA, and his claim can be dismissed on

this basis alone.

Further, plaintiff's claim fails at the fourth element, too.  "Section 504 . . . prohibits

discrimination only by a program or activity receiving Federal financial assistance." *Consolidated*

1   *Rail Corp. v. Darrone*, 465 U.S. 624, 635–36 (1984).  Plaintiff has not alleged that Pride

2   Transport receives or received federal financial assistance.  On this additional basis, plaintiff's

3   RA claim will be dismissed without prejudice but with leave to amend.

4         **E.  Breach of trust**

5         Nevada has adopted the Uniform Trusts Act. NRS 163.010.  As a result, Nevada imposes

6   civil liability upon a trustee for breaching a trust. NRS 163.115(3)(c).

7         Here, plaintiff has not stated a plausible claim for breach of trust.  To begin, the Trusts

8   Act applies to express trusts only. NRS 163.020(3).  But plaintiff does not allege the existence of

9   a trust.  In fact, plaintiff's allegations do not speak to how the supposed trust between plaintiff

10  and defendant was formed, what the trustee's duties were, and how the supposed trustee violated

11  those duties.  In short, plaintiff's claim is far too threadbare to support a claim for breach of trust,

12  and this claim will be dismissed without prejudice but with leave to amend.[10]

13        **F.  Breach of contract**

14        To state a claim for breach of contract, plaintiff must allege: (1) the existence of a valid

15  contract, (2) breach, and (3) damages as a result of the breach. *Tarr v. Narconon Fresh Start*, 72

16  F. Supp. 3d 1138, 1141 (D. Nev. 2014).  A contract is valid if there has been "an offer and

17  acceptance, meeting of the minds, and consideration." *Id.* (citing *May v. Anderson*, 119 P.3d

18  1254, 1257 (Nev. 2005)).

19        Here, plaintiff fails to state a plausible claim for breach of contract.  Plaintiff's complaint

20  mentions a breach of contract in the introduction to his complaint, but then never again.

21  Plaintiff's allegations do not speak to the existence of a valid contract, what the terms of the

22  contact were, how defendant breached the contract, or how he was damaged as a result of the

23  breach.  Therefore, plaintiff's claim will be dismissed without prejudice but with leave to amend.

24

25 ─────────────────────

26        [10]  To the extent plaintiff meant to plead the existence of an implied trust, "[i]mplied trusts"—such as a constructing or resulting trust—"are equitable remedies," they are not causes of action. *Bemis v. Estate of Bemis*, 967 P.2d 437, 741 (Nev. 1998).  A remedy can be requested in connection with a substantive claim, but a remedy cannot be a standalone claim. *Jensen v. Quality Loan Servc. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010).  Therefore, plaintiff's claim for breach of trust is dismissed on this basis, too.

27

28

**G. Breach of the covenant of good faith and fair dealing**

To establish a claim for breach of the implied covenant of good faith and fair dealing, plaintiff must allege: (1) the existence of a contract between the parties; (2) that defendant breached its duty of good faith and fair dealing by acting in a manner unfaithful to the purpose of the contract; and (3) that plaintiff's justified expectations under the contract were denied. *Rosas v. GEICO Casualty Co.*, 365 F. Supp. 3d 1123, 1127 (D. Nev. 2019) (citing *Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995)).

Here, plaintiff fails to state a plausible claim for breach of the implied covenant of good faith and fair dealing. For the first element, the Court has already found that plaintiff failed to allege the existence of a contract. It follows, then, that the Court is without sufficient allegations to determine whether defendant acted in a manner unfaithful to the purpose of the contract. Finally, plaintiff did not allege what his justified expectations were under the contract and how those expectations were denied. Therefore, plaintiff's claim will be dismissed without prejudice but with leave to amend.

**V.     Instructions for filing an amended complaint**

Plaintiff is instructed that if he intends to file an amended complaint, an amended complaint supersedes the original complaint and, thus, the amended complaint must be complete by itself. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original"); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (holding that for claims dismissed with prejudice, a plaintiff is not required to reallege such claims in a subsequent amended complaint to preserve them for appeal). Plaintiff's amended complaint must contain all claims, defendants, and factual allegations that Plaintiff wishes to pursue in this lawsuit.

**VI.    Conclusion**

IT IS THEREFORE ORDERED that plaintiff's Application to Proceed in forma pauperis (ECF No. 21) is GRANTED.

1       IT IS FURTHER ORDERED that all of the claims in plaintiff's complaint (ECF No. 11)

2 are dismissed without prejudice but with leave to amend.

3       IT IS FURTHER ORDERED that by **March 10, 2021,** plaintiff must file an amended

4 complaint consistent with the instructions in this order.  Failure to meet this deadline will result in

5 a recommendation to the district judge that this case be dismissed without prejudice.

6       DATED: February 17, 2021.

7

8 _____

9 BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28